UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHELE JOHNSON,

                              Plaintiff,

v.                                                  3:19-CV-1190
                                                           (LEK/ML)

ALL METRO HOME CARE SERVS.,

                              Defendant.
_____

APPEARANCES:                                             OF COUNSEL:

MICHELE JOHNSON
  Plaintiff, *Pro Se*
150 Moeller Street, Apartment 404
Binghamton, New York 13904

MIROSLAV LOVRIC, United States Magistrate Judge

# ORDER and REPORT-RECOMMENDATION

The Clerk has sent this *pro se* complaint together with an application to proceed *in forma pauperis* and a motion to appoint counsel filed by Michele Johnson ("Plaintiff") to the Court for review. (Dkt. Nos. 1, 2, and 3.) For the reasons discussed below, I grant Plaintiff's *in forma pauperis* application (Dkt. No. 2), deny Plaintiff's motion to appoint counsel (Dkt. No. 3), and recommend that Plaintiff's Complaint (Dkt. No. 1) be dismissed in part without prejudice and accepted in part for filing.

## I. BACKGROUND

Construed as liberally[1] as possible, Plaintiff's Complaint alleges that her rights have been violated by All Metro Home Care Services, Inc. ("Defendant"), her former employer. (*See generally* Dkt. No. 1.) More specifically, Plaintiff alleges that she is a Muslim and domestic violence victim and that Defendant discriminated and retaliated against her because of those protected characteristics. (*Id.*) Plaintiff alleges that beginning in August 2018, she started working with a client ("Client 1") in the course of her employment with Defendant and was working on average, approximately one-hundred hours per week. (*Id.*) Plaintiff alleges that on or about November 21, 2018, she was asked to take on another client ("Client 2"), who was a victim of domestic violence. (*Id.*) Plaintiff alleges that she informed Defendant that she is also a "survivor of Domestic Violence and would prefer not to take on the assignment." (*Id.*) Plaintiff alleges that despite her preferences, Defendant assigned her Client 2. (*Id.*)

Plaintiff alleges that after disclosing that she is a survivor of domestic violence, Defendant began treating her differently than its other employees in the following two ways (1) Defendant's e-mails started going to Plaintiff's spam folder, and (2) two office co-workers—Deborah and Amy—were "noticeably cold towards" Plaintiff (in that they used to call her Sunshine and then began calling her "Michele[,] with less friendliness in their tone"). (*Id.*)

---

[1] The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 [2d Cir. 1994]).

Plaintiff further alleges that on December 11, 2018, she was "pulled off Client 1's case" because, according to Defendant, she was "accused of psychological and sexual abuse of Client 1." (*Id.*) As a result, Plaintiff alleges that her weekly hours worked were reduced from approximately one hundred, to twelve hours per week. (*Id.*) Plaintiff alleges that she was falsely accused by Defendant and her "hours were cut" because she is Muslim and a survivor of domestic violence. (*Id.*) In addition, Plaintiff alleges that she was terminated as an employee of Defendant and she was retaliated against. (*Id.*)

Based on these factual allegations, Plaintiff appears to allege the following three causes of action: (1) discrimination on the basis of her status as a survivor of domestic violence in violation of Title VII of the Civil Rights Act 42 U.S.C. § 2000 *et seq.*, (2) discrimination on the basis of her religion in violation of Title VII of the Civil Rights Act 42 U.S.C. § 2000 *et seq.*, and (3) retaliation in violation of Title VII of the Civil Rights Act 42 U.S.C. § 2000 *et seq.* based on (a) her reduction in working hours, and (b) an incorrect notation that Plaintiff was a "no call/no show" on an unspecified date that she was scheduled to work. (*Id.*)

For a more complete statement of Plaintiff's claims, refer to the Complaint. (Dkt. No. 1.)

## II. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $400, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1).[2] After reviewing Plaintiff's *in*

---

[2] The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing

3

*forma pauperis* application (Dkt. No. 2), the Court finds that Plaintiff meets this standard.[3]

Therefore, Plaintiff's application to proceed *in forma pauperis* is granted.[4]

## III. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [2007]). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not

---

financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[3]  The Court notes that Plaintiff's IFP application states that she has no source of income, $1.30 in a checking or savings account, and approximately $2,000.00 in monthly expenses. (Dkt. No. 2.) It is unclear how Plaintiff supports herself given these alleged circumstances. However, based on the application before the Court, Plaintiff certainly qualifies for IFP status.

[4]  Plaintiff is reminded that, although the application to proceed *in forma pauperis* has been granted, she will still be required to pay fees that she may incur in this action, including copying and/or witness fees.

shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties . . . have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity . . . occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Aguilar v. United States*, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at \*2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 [2d Cir. 1998]); *see also Neitzke v. Williams*,

490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory . . . or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

## IV. ANALYSIS

### A. Review of Plaintiff's Complaint for Sufficiency

In addressing the sufficiency of a plaintiff's complaint, the court must construe her pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that Plaintiff's claims of (1) discrimination based on her status as a crime victim, (2) discrimination based on her religion that resulted in her being treated differently "in comparison to other workers" by her employer, and (3) retaliation based on a reduction in her working hours, be dismissed without prejudice. In addition, I recommend that Plaintiff's claims of (1) discrimination based on her religion that resulted in (a) the termination of her employment and (b) a reduction in the hours that she was permitted to work, and (2) retaliation based on incorrectly labeling her a "no call/no show," be accepted for filing.

#### 1. Plaintiff's Discrimination Claims

To state a case of discrimination under Title VII, a plaintiff must show that (1) she belonged to a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012).

6

### a. Crime Victim

"Title VII provides, in relevant part, that '[i]t shall be an unlawful employment practice for an employer' to take adverse action against an employee because of that employee's 'race, color, religion, sex, or national origin.'" *Vill. of Freeport v. Barrella*, 814 F.3d 594, 606 (2d Cir. 2016) (quoting 42 U.S.C. § 2000e-2(a)).

Plaintiff fails to allege facts plausibly suggesting that, as a "survivor of domestic violence," she was a member of a protected class pursuant to Title VII.

As a result, I recommend that this claim be dismissed.

### b. Religion

"'An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)). The Second Circuit has found examples of adverse employment actions to include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.'" *Vega*, 801 F.3d at 85 (quoting *Ashcroft*, 336 F.3d at 138)).

Construed as liberally as possible, the Complaint alleged that because of discrimination based on Plaintiff's religion, Defendant took the following three adverse employment actions: (1) treating Plaintiff differently "compared to other workers" (Plaintiff's e-mails being sent to a spam folder and her co-workers calling her "Michele" instead of "Sunshine"), (2) termination of Plaintiff's employment, and (3) a reduction in Plaintiff's working hours. (*See generally* Dkt. No. 1.)

Plaintiff's allegations that she was treated differently "in comparison to other workers" by Defendant, in that her incoming e-mail was being sent to a spam folder and that her co-workers, Deborah and Amy, no longer called her "Sunshine," fall far short of plausibly suggesting an adverse employment action.[5] As a result, I recommend that to the extent Plaintiff's discrimination claim is based on her being treated differently "in comparison to other workers," that this claim be dismissed.

However, out of an abundance of caution, and mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, see, e.g*., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d at 191, I recommend that a response be required to Plaintiff's discrimination claim pursuant to Title VII alleging that (a) her employment was terminated and (b) the hours she was permitted to work were reduced because of her religion.[6]

### 2. Plaintiff's Retaliation Claim

"'To establish a prima facie case of retaliation, a plaintiff must show that (1) the employee was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action.'" *Gregory v. Daly,* 243 F.3d 687, 700 (2d Cir. 2001) (quoting *Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1178 (2d Cir. 1996)).

"Under Title VII, protected activity includes both 'opposing discrimination proscribed by the statute and . . . participating in Title VII proceedings.'" *Bowen-Hooks v. City of New York*,

---

[5] In addition, these allegations appear to relate to Plaintiff's disclosure that she was a survivor of domestic violence as opposed to her protected status because of her religion. (Dkt. No. 1, Attach. 3 at ¶ 3.)

[6] Without expressing an opinion as to whether this claim can withstand a properly filed motion to dismiss or summary judgment.

13 F. Supp. 3d 179, 221 (E.D.N.Y. 2014) (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)).

It is not necessary that the conduct is actually prohibited by Title VII, but only that the plaintiff had a "good faith belief" that such conduct was prohibited. *Bowen-Hooks*, 13 F. Supp. 3d at 222 (citing *La Grande v. DeCrescente Distrib. Co. Inc.,* 370 F. App'x 206, 212 (2d Cir. 2010) ("It is well-established that a 'plaintiff may prevail on a claim for retaliation even when the underlying conduct complained of was not in fact unlawful so long as he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated [the] law.'"); *Dall v. St. Catherine of Siena Med. Ctr.,* 966 F. Supp. 2d 167, 192-93 (E.D.N.Y. 2013) (plaintiff need only have a "good faith belief" that employer's conduct was prohibited); *Kanhoye v. Altana Inc.,* 686 F. Supp. 2d 199, 206 (E.D.N.Y. 2009) ("'An employee is privileged to report and protest workplace discrimination, whether that discrimination be actual or reasonably perceived.'")).

In addition, any complaint can be informal; an employee does not need to lodge a formal complaint of discrimination. *See Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 566 (2d Cir. 2000) ("[T]he law is clear that opposition to a Title VII violation need not rise to the level of a formal complaint in order to receive statutory protection, this notion of 'opposition' includes activities such as 'making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges.'"), *superseded on other grounds by* N.Y.C. Local L. No. 85; *Ellis v. Century 21 Dep't Stores,* 975 F. Supp. 2d 244, 281, (E.D.N.Y. 2013) ("In order to oppose sexual harassment, [p]laintiff need not have filed a formal complaint as long as she complained of activity that she had a good faith, reasonable belief violated the law."); *Bennett v. Hofstra*

*Univ.,* 842 F. Supp. 2d 489, 500 (E.D.N.Y. 2012) (noting that Title VII does not require a formal complaint); *Martin v. State Univ. of N.Y.,* 704 F. Supp. 2d 202, 227 (E.D.N.Y. 2010) ("It is clearly established that 'informal complaints to supervisors constitute protected activity under Title VII.'").

However, while such complaints may be informal, they cannot be so vague or "generalized" that the employer could not "reasonably have understood [ ] that the plaintiff's complaint was directed at conduct prohibited by Title VII." *Rojas v. Roman Catholic Diocese of Rochester,* 660 F.3d 98, 108 (2d Cir. 2011); *see also Ellis,* 975 F. Supp. 2d at 280 (E.D.N.Y. 2013) ("When making the complaint, Plaintiff must do so in 'sufficiently specific terms so that the employer is put on notice that the plaintiff believes he or she is being discriminated against on the basis of [the protected status].'"); *Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC,* 470 F. Supp. 2d 345, 357 (S.D.N.Y. 2007) ("ambiguous complaints that do not make the employer aware of alleged discriminatory misconduct do not constitute protected activity").

Here, construing the Complaint liberally, it alleges two adverse employment actions as a result of retaliation: (1) reduction of Plaintiff's working hours, and (2) incorrectly documenting Plaintiff as a "no call/no show" and suspending her. (Dkt. No. 1, Attach. 2 at 1-2.)

### a. Reduction in Working Hours

According to the NYSDHR Determination and Order After Investigation and Plaintiff's NYSDHR verified complaint (the only mentions of Plaintiff's protected conduct in the Complaint), Plaintiff filed her NYSDHR complaint on December 12, 2018, which was one day after her working hours were reduced. (*Id.*; Dkt. No. 1, Attach. 3.) It would be impossible for Defendant to have been aware of Plaintiff's protected conduct before it occurred. *See also Taylor v. City of New York (Dep't of Sanitation)*, 17-CV-1424, 2019 WL 3936980, at *3

(S.D.N.Y. Aug. 20, 2019) (holding that "because [the defendant]'s decision not to hire [p]laintiff preceded his filing of the charge of discrimination with the EEOC, no relevant causal connection between the two events is possible.")

As a result, I recommend that, to the extent Plaintiff's retaliation claim is based on her reduction in hours, the claim be dismissed for failure to state a claim.

### b. No Call/No Show

While not clear on the face of the Complaint, it appears as though Plaintiff was incorrectly noted as a "no call/no show" after the filing of her NYSDHR complaint. (Dkt. No. 1, Attach. 2.) Again, out of an abundance of caution, and mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, see, e.g., *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d at 191, I recommend that a response be required to Plaintiff's retaliation claim pursuant to Title VII alleging that she was incorrectly noted as a "no call/no show" in retaliation for her NYSDHR complaint.[7]

### 3. Whether to Permit Amendment

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding*

---

[7] Without expressing an opinion as to whether this claim can withstand a properly filed motion to dismiss or summary judgment.

*L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

Plaintiff could potentially amend the Complaint to assert cognizable causes of action regarding the alleged (1) discrimination she suffered as a victim of a crime, (2) discrimination based on her religion that resulted in her being treated differently "in comparison to other workers" by Defendant, and (3) retaliation based on her reduced working hours. Accordingly, I recommend that Plaintiff be granted leave to amend her Complaint regarding those claims. This by no means suggests that those claims are meritorious, as it appears unlikely that Plaintiff can state federal claims based upon those allegations.

If Plaintiff chooses to file an amended complaint, she should note that the law in this circuit clearly provides that "'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.'" *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 [2d Cir. 1987]); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any named defendant and

the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

### B. Plaintiff's Motion to Appoint Counsel

It is well-settled that there is no right to appointment of counsel in civil matters. *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994), *superseded by statute on other grounds, as stated in, Norguard Ins. Co. v. RCJ Constr. Servs. Corp.*, 14-CV-0432, 2018 WL 1178034, at *3 (E.D.N.Y. Jan. 19, 2018). However, the Court may request an attorney to represent any person "unable to afford counsel." 28 U.S.C. § 1915(e)(1). Appointment of counsel must be done carefully in order to preserve the "precious commodity" of volunteer lawyers for those litigants who truly need a lawyer's assistance. *Cooper v. A. Sargenti, Inc*., 877 F.2d 170, 172-73 (2d Cir. 1989).

Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion:

> [The court] should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and

any special reason in th[e] case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61-62 (2d Cir. 1986)).

This is not to say that all, or indeed any, of these factors are controlling in a particular case. Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Hodge*, 802 F.2d at 61). The Court must consider the issue of appointment carefully because "every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause." *Cooper*, 877 F.2d at 172.

A more fully developed record would be necessary before an assessment can be made as to whether counsel should be appointed. *See Hendricks*, 114 F.3d at 392 (court must look to the likelihood of merit of the underlying dispute in determining whether to appoint counsel). As a result, the motion is denied without prejudice so that Plaintiff will not be precluded from making a subsequent motion for appointment of counsel.

## V. SUMMARY, RECOMMENDATION, AND ORDER

Having reviewed Plaintiff's IFP application, I find that she meets the requirements for IFP status, and therefore grant her motion for leave to proceed without prepayment of fees. Having reviewed Plaintiff's motion for appointment of counsel, I deny that motion without prejudice. Turning to the merits of Plaintiff's Complaint, I recommend that Plaintiff's Complaint be dismissed in part with leave to amend and accepted in part for filing.

**WHEREFORE**, based on the findings above, it is

**ORDERED** that the application to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**; and it is further

**ORDERED** that the motion to appoint counsel (Dkt. No. 3) is **DENIED** without prejudice; and it is further respectfully

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be accepted for filing with respect to the following two claims: (1) discrimination based on her religion for (a) the termination of her employment, and (b) the reduction of her working hours; and (2) retaliation in that Defendant incorrectly noted Plaintiff as a "no call/no show"; and it is further

**RECOMMENDED** that Plaintiff's Complaint be **DISMISSED** without prejudice regarding the following three claims: (1) discrimination based on her status as a crime victim; (2) discrimination based on her religion in that she was treated differently "in comparison to other workers"; and (3) retaliation based on her reduced working hours; and it is further

**RECOMMENDED** that, in the event Plaintiff does not choose to file an amended complaint and the above recommendations are adopted, the case should move forward with respect to Plaintiff's claims of (1) discrimination based on her religion regarding (a) the termination of her employment, and (b) the reduction of her working hours; and (2) retaliation in that Defendant incorrectly noted Plaintiff as a "no call/no show"; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[8]

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[9] Such objections shall be filed with the

---

[8] The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

[9] If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to

15

Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 [2d Cir. 1989]).

Dated: November 7, 2019
      Binghamton, New York

*Miroslav Lovric*
Miroslav Lovric
U.S. Magistrate Judge

---

serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).